In the Matter of LONG ISLAND LIGHTING Co., Petitioner, v STATE TAX COMMISSION et al., Respondents.

Third Department, December 16, 1976

*Edward M. Barrett (Herbert M. Leiman* and *William R. Humburg* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General (Lawrence J. Logan* and *Ruth Kessler Toch* of counsel), for State Tax Commission, respondent.

*W. Bernard Richland, Corporation Counsel (Isaac C. Donner* and *Samuel J. Warms* of counsel), for City of New York, respondent.

*James M. Catterson, Jr. (Vincent J. Flanagan* of counsel), for County Clerk of Nassau County and another, respondents.

*Howard E. Pachman (Stanley S. Corwin* of counsel), for County Treasurer of Suffolk County, respondent.

KANE, J. Chapter 400 of the Laws of 1971, effective June 9, 1971, added section 253-a to the Tax Law (all statutory references hereinafter are to the Tax Law). It authorized cities with a population of one million or more to impose a mortgage recording tax on property situated in such a city in addition to the tax imposed by section 253. After fixing a basic rate, it was also provided with respect to mortgages covering lands all within the State, but not all within such a city, that "the amount of such tax * * * shall be determined in a manner similar to that prescribed in the first paragraph of section two hundred sixty which concerns real property situated in two or more counties" (§ 253-a, subd 3). On December 23, 1971, petitioner recorded a mortgage on real property located in the City of New York and in the Counties of Nassau and Suffolk. It paid the tax due under section 253, but commenced this proceeding to obtain the refund of certain additional monies

when the respondent denied its application for a redetermination of the amount said to be owing under section 253-a.

As relevant, section 260 contains the following language: "When the real property covered by a mortgage is situated in more than one tax district, the state tax commission shall apportion the tax paid on such mortgage between the respective tax districts upon the basis of the relative assessments of such real property as the same appear on the last assessment-rolls. If, however, the whole or any part of the property covered by such a mortgage is not assessed upon the last assessment-roll or rolls of the tax district or districts in which it is situated, or is so assessed, as a part of a larger tract, that the assessed value cannot be determined, or if improvements have been made to such an extent as materially to change the value of the property so assessed, the tax commission may require the local assessors in the respective tax districts, or the mortgagor, or mortgagee, to furnish sworn appraisals of the property in each tax district, and upon such appraisals shall determine the apportionment. If such mortgage covers real property in two or more counties, the tax commission shall determine the proportion of the tax which shall be paid by the recording officer who has received the same to the recording officers of the other counties in which are situated the tax districts entitled to share therein". Respondent utilized the actual assessment roll figures of the premises covered by the mortgage in calculating petitioner's section 253-a tax. The assessment of the New York City property was added to the assessments of the parcels located elsewhere within the State and the ratio pertaining to the New York City realty was then applied to the sum derived from taxing the entire mortgage amount at the section 253-a rate. Petitioner maintains that this method of determining its liability was improper.

Only the third sentence of the quoted paragraph refers to property located in two or more counties. It merely declares that the respondent "shall determine the proportion" but does not directly specify how that is to be accomplished. Assuming that guidance was correctly obtained from the preceding sentences, respondent argues that the term "relative assessments" means a comparison based on actual assessment figures and, in any event, since that is the practical interpretation which has been placed on that language for a long period of time without legislative interference, we are bound to

accept it. However, the principle of upholding the construction given to a statute by the agency charged with its administration is subject to the important qualification that the selected construction is not irrational or unreasonable (see, e.g., *Matter of Howard v Wyman,* 28 NY2d 434). Here the very wording of that statute reveals that the Legislature never intended the apportionment process would always be inflexibly tied to raw assessment figures. It was recognized, for example, that improvements to the covered realty might have so materially changed the value of the property as to warrant resort to appraisals of the respective parcels in each tax district. This conclusion is further reinforced by the last sentence of section 260 which recites that "where the provisions for distribution of the tax among tax districts are inapplicable or inadequate, the tax commission shall establish a basis of apportionment that will be equitable and fair." We do not mean to imply that an apportionment founded on relative assessments is not allowed, but it should be fairly obvious that the germane paragraph admits of more than one interpretation and it remains to be seen whether the construction chosen by respondent is irrational or unreasonable where similarity is all that is required under section 253-a.

The total amount of the basic mortgage recording tax under section 253 is fixed and the section 260 machinery for dividing it among the various taxing authorities is of no particular concern to the taxpayer. Thus, the typical apportionment which is based on a comparison of relative assessments strikes us as a simple and inexpensive method by which those tax proceeds may be shared. This does not hold true with the newer section 253-a tax, however, because the very amount of additional tax which must be paid to the City of New York is made to depend on some ratio between covered property located therein and elsewhere within the State. As a result, the taxpayer is vitally interested in how that ratio is computed for the higher the ratio the higher will be the tax burden. The parties acknowledge that the City of New York and the involved taxing units in the Counties of Nassau and Suffolk assess properties within their respective boundaries at a percentage of full value. Significantly, these percentages are not equal. When actual assessments are combined, therefore, the ratio formed thereby is not comprised of uniform elements. While these inherently unequal assessments may sometimes be conveniently employed by governmental entities

to divide the section 253 tax, it can hardly be urged that a process which mixes apples and oranges to arrive at the amount of additional tax due under section 253-a is either rational or reasonable.

In 1975 the Court of Appeals denounced these fractional assessment customs and aptly noted that the State Equalization Board was likely created to correct some of the problems that disparate valuations generated (*Matter of Hellerstein v Assessors of Town of Islip,* 37 NY2d 1, 12). Petitioner argues, with some logic, that if the existing State-wide equalization rates were applied to the separate assessments of its mortgaged property an equitable ratio could be developed. Nevertheless, an equalization rate does not measure the ratio of assessed valuation to the full value of any individual property, nor does it insure that assessments are made at a uniform percentage of full value within a taxing jurisdiction (*Matter of Hellerstein, supra,* p 9). Although the equalization approach would certainly produce a fairer comparison between properties located in more than one taxing unit, we hesitate to conclude that this is the *only* acceptable device by which respondent may calculate petitioner's section 253-a tax liability. It is enough to agree that the challenged construction of section 260 is irrational and unreasonable in this situation without mandating that respondent adopt the alternative favored by petitioner. Accordingly, the petition should be granted to the extent of remitting the matter to respondent for further proceedings not inconsistent herewith. We have not found it necessary to reach or consider petitioner's remaining contentions.

The determination should be annulled and the matter remitted to the State Tax Commission for further proceedings not inconsistent herewith, without costs.

HERLIHY, J. (dissenting). In subdivision 3 of section 253-a of the Tax Law (all statutory references hereafter are to Tax Law) it is provided that as to mortgages covering lands all located within the State but not all within the city, "the amount of such tax due and payable to such city shall be determined in a manner *similar* to that prescribed in the first paragraph of section two hundred sixty which concerns real property situated in two or more counties." (Emphasis supplied.)

The first paragraph of section 260 has only one sentence which expressly applies to apportionment among counties and

it provides as follows: "If such mortgage covers real property in two or more counties, the tax commission shall determine the proportion of the tax which shall be paid by the recording officer who has received the same to the recording officers of the other counties in which are situated the tax districts entitled to share therein." The first paragraph of section 260 also directed the State Tax Commission to apportion the tax paid on a mortgage covering property located in more than one tax district "upon the basis of the *relative assessments of such real property* as the same appear on the last assessment-rolls." (Emphasis supplied.)

The petitioner contends that the commission erred in using the assessed value of the New York City property as a basis for determining the proportionate share of the New York City real property to which the tax is applied. This contention is based upon the theory that the language of section 260 in its first paragraph requires that market value or equalization rate figures be utilized.

The question of whether or not section 260 as to fees collected pursuant to section 253 requires the use of actual market values or equalization rates is not determinative of this proceeding. The issue raised by the petitioner in this regard is without merit as section 253-a merely requires a "similar" method to compute the tax base. In this regard the use of the assessed values on the last assessment roll is literally "similar" to the language of the first paragraph of section 260 and is not irrational. The use of such figures fixes the amount of the tax with certainty and in 1971 when section 253-a was added, it was common knowledge that assessors were not entering the actual value of real property as its assessed value. (See *Matter of Hellerstein v Assessors of Town of Islip,* 37 NY2d 1.)

The petitioner further contends that since an apportionment as to property located both within the City of New York and without the State of New York would be based on actual value, the use of assessment roll values within the State violates its equal protection rights. However, it seems obvious that as to the class of mortgages located within the State, the same rate is applicable to all. Since real property located without the State might lead to an improper tax base, the requirement of actual value is necessary to assure that there is no extra-territorial tax. However, in the instant class there is no such problem and the distinction between the classes has

a sound basis. This contention has no merit. (See *Mercantile Nat. Bank of City of N.Y. v Mayor, etc.,* 172 NY 35, 48.)

We must assume that the Legislature realized that the passage of section 253-a was primarily for the financial benefit of New York City and had it intended to change the well-established method of apportioning mortgage tax fees it could have so provided. It is not for the court to improvise and it was the obligation of the Tax Commission to enforce the law as written. The commission determined the proportion of the mortgage taxable within the framework of the law and such determination was neither arbitrary nor capricious. *(Matter of Condé Nast Pub. v State Tax Comm.,* 51 AD2d 17.)

While the majority disagrees with the Tax Commission on the basis that its decision "is irrational and unreasonable" and would remit, they offer no suggestion as to how the commission shall determine the proportion so that the result will be "rational and reasonable". *(People v Newman,* 32 NY2d 379, 389, cert den 414 US 1163.)

While the majority herein seeks to require the commission to reconsider its interpretation of section 253-a as it incorporates section 260, the majority is actually eliminating the express limitation by the Legislature of section 260 to its first paragraph for the purpose of section 253-a.

The determination should be confirmed.

GREENBLOTT, J. P., MAHONEY and LARKIN, JJ., concur with KANE, J.; HERLIHY, J., dissents and votes to confirm in an opinion.

Determination annulled, and matter remitted to the State Tax Commission for further proceedings not inconsistent herewith, without costs.